U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

NOV 19, 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| **MAGNOLIA MANAGEMENT CORP., et al.** | **CIVIL ACTION NO. 06-0447** |
| -vs- | **JUDGE DRELL** |
| **FEDERAL INSURANCE COMPANY** | **MAGISTRATE JUDGE KIRK** |

---

### RULING

Before the Court are two motions for summary judgment filed by defendant Federal Insurance Company ("FIC"). The first motion (Doc. # 28) seeks summary judgment against plaintiffs, Magnolia Management Corporation, Magnolia Management Service of Louisiana, Inc., and EBBDR, LLC d/b/a Lexington House (collectively, "MMC"), for failure to file an action timely pursuant to the terms of the insurance policy. The second motion (Doc. # 29) seeks summary judgment for a variety of other reasons. Because we find that, as a matter of law, plaintiffs have indeed failed to file an action timely under the terms of the insurance policy, FIC's first motion (Doc. # 28) must be GRANTED, and plaintiffs' claims will be DISMISSED. Accordingly, FIC's second motion (Doc. # 29) will be DENIED AS MOOT.

### BACKGROUND

The material facts are not in dispute. Plaintiffs run Lexington House, a nursing home located in Alexandria, Louisiana. On January 26, 2004, Jo Lessing, the facility bookkeeper at Lexington House, confessed to "taking some cash and checks from

residents around 2002 and 2003" and was thereafter suspended. (Doc. # 28-7, Statement of Uncontested Material Facts; Doc. # 28-4, Exh. B-3). This confession and its consequences are at the heart of the matter now before us.

At the time of the confession, Executive Protection Policy # 8181-4819, issued by FIC to MMC, was in effect.[1] (Doc. # 28-7, Statement of Uncontested Material Facts). Crime coverage under the policy included "direct losses of **Money, Securities**, or other property caused by **Theft** or forgery by any **Employee** of any **Insured** acting alone or in collusion with others." (Doc. # 40, Exh. A to Doc. # 28) (emphasis in original). In addition, the policy includes Paragraph 22 ("Notice-Proof [/]Legal Proceedings") which reads in relevant part:

> Upon knowledge or discovery by a proprietor, partner, officer or **Insurance Representative** of any **Insured** of loss or an occurrence which may become a loss, written notice shall be given the Company at the earliest practicable moment, and in no event later than ninety days after such discovery. Within four months after such discovery the **Insured** shall furnish to the Company affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of two years from the discovery of such loss . . . .

(Doc. # 40, Exh. A to Doc. # 28, p. 30) (emphasis in original).

At the time, Veronique "Cookie" Liggin Dekeyzer was MMC's Insurance Administrator.[2] On February 3, 2004, she sent an e-mail to Fox-Everett Insurance, agent for FIC, which reads in relevant part:

---

[1] The effective policy period was August 1, 2003 to August 1, 2004 (Doc. # 40, Exh. A to Doc. 28, p. 3).

[2] Based on MMC's Memo in Opposition to the first motion for summary judgment, we understand that Ms. Cookie Liggin married in 2007 and changed her last name to Dekeyzer. (Doc. # 43-1, p. 2). In most documents, Ms. Dekeyzer is identified as Cookie Liggin. (Doc. # 28-4, p. 9; Doc. # 28-5, p. 1; Doc. # 43-2, pp. 3, 5). However, for consistency, we refer to her throughout this ruling as Ms. Dekeyzer, her current preference, even where she is identified in a particular document as Ms. Liggin.

> [L]ate yesterday I received a call from the Administrator, Gary Grand, of Lexington House regarding a possible claim for theft of monies by an employee. As I understand from the Administrator, an accounting discrepancy was found, and the facility bookkeeper, Jo Ann Lessing, was confronted regarding such. The employee admitted to taking money from patient accounts. . . .
>
> Currently, it is unknown as to how much money was taken and the timeframe [sic] involved, although it is suspected that monies were likely being taken from 2002 through 2003. A meeting is being held today to determine strategy of the investigation. As additional information is received, I will advise you accordingly.
>
> Regrettably, at this time it will be necessary Chubb [Group of Insurance Companies, to whom notice is to be directed under the terms of the insurance policy] be placed on notice of the potential claim.

(Doc. # 43-2, Exhs. A and A-1 to plaintiff's memo in opposition).[3]

On May 12, 2004, Ms. Dekeyzer requested an extension of time from the Chubb Group of Insurance Companies. Gary Henry, responding to the request by letter the same day, stated:

> I agree to extend the time to file the proof of loss . . . .
>
> Please be advised that it is the insured's responsibility to establish that a direct, covered loss has occurred and the amount of that loss. Our investigation of this claim will not proceed until a complete proof of loss has been returned to us with supporting documentation. As we are not yet able to proceed with our investigation of this loss, we must reserve all rights and defenses under the fidelity policy and otherwise. Neither this letter nor any subsequent investigations or inquiries we may make are deemed a waiver of any of the bond's terms and conditions, except as herein noted. All other rights are expressly reserved.

(Doc. # 43-2, Exhs. A and A-3). (Though the letter refers to "the bond," a fidelity bond similar to the coverage at issue here is essentially an insurance policy, and we will use

---

[3] We note here that plaintiff's memorandum in opposition was not timely filed, but the delay is excused because we do not see it as prejudicial to the defendant, particularly in light of our ruling.

3

the terms interchangeably for purposes of this ruling.)[4]

Ms. Dekeyzer submitted the proof of loss with supporting documentation on November 22, 2004, identifying the date of loss ("DOL") as "1/26/04" in the subject line. (Doc. # 28-5, Exh. C to Doc. # 28, p. 1).[5] In the sworn statement and proof of loss, signed by Gary Grand, Administrator of Lexington House, the typed response beside "Date of Loss" is "Discovered 01/26/04." (Doc. # 28-5, Exh. C to Doc. # 28, p. 10). The response to "Description of Loss (What happened?)" includes the following statements: "Investigation research as of this date indicates an occurrence time from Jan 2001 thru discovery date of Jan 26, 2004. The total amount of this loss has not yet been determined." (Doc. # 28-5, Exh. C to Doc. # 28, p. 10).

FIC denied coverage for the loss, and on February 15, 2006, MMC filed suit against FIC in the Ninth Judicial District Court of the State of Louisiana. The suit was removed on March 20, 2006. Eventually, FIC filed the present motion for summary judgment for MMC's failure to file an action timely pursuant to the terms of the insurance policy (Doc. # 28) and the second motion for summary judgment (Doc. # 29) asserting a variety of

---

[4] See, e.g., Crescent Cigar & Tobacco Co. v. National Casualty Co., 155 So. 505, 507-08 (La. App. Orleans 1934) ("It has often been held that where a policy of insurance is issued (and a fidelity bond is nothing more or less than an insurance policy) . . ."); Black's Law Dictionary 188 (8th ed.2004) ("**fidelity bond.** A bond to indemnify an employer or business for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust. -- Also termed blanket bond. [Cases: Insurance Key Numbers 1014, 2400. C.J.S. Insurance §§ 8, 1075.]") (emphasis in original); American Empire Ins. Co. of S. D. v. Fidelity & Deposit Co. of Md.., 408 F.2d 72 (5th Cir. 1969) ("The fidelity bond was an indemnity insurance contract. The insurer's liability does not arise until the insured has suffered a proven loss. It is in the nature of a personal insurance contract. The insurance is not on property but is for loss of property.") (cited and partially quoted in Fidelity & Deposit Co. v. Smith, 730 F.2d 1026, 1030 (5th Cir. 1984)).

[5] FIC apparently does not dispute that the proof of loss was timely filed, stating, "In the months following the discovery of the loss, Plaintiffs investigated the loss and made numerous requests to extend the deadline for filing its Proof of Loss. Plaintiffs finally provided its Proof of Loss on November 23, 2004 . . . ." (Doc. # 28-2, p. 6).

theories.

## ANALYSIS

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure mandates that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

### THE FIRST MOTION (DOC. # 28): TIMELINESS OF SUIT

The only issue in the first motion for summary judgment (Doc. # 28) is whether MMC timely filed suit under the terms of the insurance policy. As noted above, no

genuine issues of material fact remain with respect to this motion. MMC, however, argues that there are four contested material facts:

[1] The intent of the parties with respect to the coverage to be provided by Jo Lessing's employer under Federal Insurance Policy No. 81814819.
[2] Whether, in fact, Jo Lessing's employer is covered by Federal Insurance Policy No. 81814819.
[3] The date of the 'discovery of such loss' within the meaning of the Federal Insurance Policy No. 81814819.
[4] On what date a 'loss' was suffered by any insured under Federal Insurance Policy No. 81814819.

(Doc. # 43-3, MMC's statement of contested material facts).

As to the first item, the contract may be construed with reference to the plain language alone, without reference to the parties' subjective intent. As to the second item, we note that MMC necessarily assumes that this policy insured Lexington House and covered the acts of Jo Lessing as an employee of an insured. For purposes of this ruling, we assume without deciding that these assumptions are correct. Theoretically then, the losses caused by Jo Lessing's theft could be covered under the policy. As to the third and fourth items, the underlying facts—what actually happened—are not disputed. Rather, the <u>characterization</u> of those facts is disputed. That characterization, however, is a matter of law, and because the underlying facts are not disputed, we have been furnished all information necessary to make a determination.

FIC's most basic argument is that Paragraph 22 of the insurance policy, discussing giving of notice of "loss or an occurrence which may become a loss," requires suit to be filed within two years from "the discovery of such loss." (Doc. # 40, Exh. A to Doc. # 28, p. 30). FIC argues that the loss was discovered on January 26, 2004, the date

6

that Jo Lessing confessed to "taking some cash and checks from residents." (Doc. # 28-4, Exh. B-3 to Doc. # 28). FIC further argues that because suit was not filed until February 15, 2006, it was not filed within two years of "discovery of such loss" and, being untimely, should be dismissed.

At the outset, we must look to Louisiana law to determine whether the two-year "prescriptive" period set out in the insurance policy is acceptable. In the Louisiana Insurance Code, La. R.S. § 22:629(B) provides:

> B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the **inception of the loss** when the claim is a first-party claim, as defined in R.S. 22:1210.92, and arises under any insurance classified and defined in R.S. 22:6(6), (7), (10), (11), (12), (13), and (15) or to a period of less than one year from the time **when the cause of action accrues** in connection with all other insurances unless otherwise specifically provided in this Code.

Id. (emphasis added).

The two-year prescriptive period stated in the insurance policy at issue here—which is triggered by "discovery of such loss" rather than merely "inception of the loss" or "when the cause of action accrues"—would satisfy even the stricter two-year limit under the Louisiana Insurance Code. It is perfectly acceptable (and indeed, favorable to the insured) to start the prescriptive period from discovery of the loss rather than, e.g., the mere occurrence of loss. "In the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid." Midco Louisiana Co. v. Aquatic Equipment & Engineering, Inc., 423 So. 2d 10 (La. App. 1 Cir. 1982) (citing Suire v. Combined Insurance Company of America, 290 So.2d 271 (La.1974);

7

Stroud v. Northwestern National Insurance Company, 360 So.2d 528 (La.App. 2nd Cir.), writ denied, 362 So.2d 575 (La.1978); Joe E. Freund, Inc. v. Insurance Company of North America, 261 F.Supp. 131 (W.D.La.1966), affirmed 370 F.2d 924 (5th Cir.1967)) (upholding a limitation of suit provision establishing twelve months from "discovery . . . of the occurrence which gives rise to the claim.").

Being satisfied with this threshold public policy matter, we must now determine two principal issues. First, what is the earliest possible date of "discovery of such loss" under the FIC policy? Second, did "discovery of such loss" actually take place at that date, or was it somehow delayed due to the protracted investigation into the extent of the loss?

## I. EARLIEST POSSIBLE DATE

Although we have determined that the limitation of suit provision at issue here does not violate Louisiana insurance law, we are still called on to interpret what constitutes "discovery of such loss." For this issue, we will refer to cases involving employee fidelity bonds, which involve similar issues and similar facts and, as noted above, are essentially insurance policies. There are at least two possibilities for the earliest date of "discovery of such loss." First is the date that anyone at MMC discovered Jo Lessing's actions. As explained by the Fifth Circuit:

> The well-established rule is that the Insured under a blanket employee's fidelity bond is not bound to give notice 'until he (has) acquired knowledge of some specific fraudulent or dishonest act which might involve the (Insurer) in liability for the misconduct'. Notice is not required when the obligee merely suspects or has reason to suspect the wrongdoing. American Surety Co. v. Pauly, 170 U.S. 133, 144, 18 S.Ct. 552, 42 L.Ed. 977 (1898).

Federal Deposit Ins. Corp. v. Aetna Cas. & Sur. Co., 426 F.2d 729, 739 (5th Cir. 1970). At

8

the latest, MMC acquired such knowledge on January 26, 2004, when Jo Lessing signed her confession.

However, MMC argues that "discovery of such loss" could not occur under Paragraph 22 of the policy except "[u]pon knowledge or discovery by a proprietor, partner, officer or **Insurance Representative** of any **Insured** of loss or an occurrence which may become a loss . . . ." (Doc. # 40, Exh. A to Doc. # 28, p. 30) (emphasis in original). MMC then makes several technical arguments, but they are without merit based on the undisputed facts before us. Under the policy, "'Insurance Representative' means the Insured's Employees designated to represent the Insured for the purpose of effecting and maintaining insurance." (Doc. # 40, Exh. A to Doc. # 28, p. 32) (emphasis removed). Based on her affidavit, Cookie Dekeyzer was clearly an "Insurance Representative" under the terms of the insurance policy. (Doc. # 43-2, Exh. A to plaintiff's memo in opposition). Based on Ms. Dekeyzer's affidavit (Doc. # 43-2, Exh. A) and the February 3, 2004 e-mail she sent to Fox-Everett Insurance, agent for FIC, it is clear that she had notice either on February 2 or 3, 2004. Thus, even the latest possibility for earliest "discovery of such loss" is over two years before suit was filed on February 15, 2006.

## II. EFFECT OF INVESTIGATION INTO EXTENT OF LOSS

The sole remaining issue is whether an investigation into the extent of loss may somehow delay "discovery of such loss" under the terms of the policy. MMC argues that on January 26, 2004, it had not discovered a loss, only a possible liability which might be insured. (Doc. # 43-1, memo in opposition to Doc. # 28). It asserts that "discovery

9

of such loss" did not occur until the investigation into the extent of loss was completed much later in 2004, well within the two year period prior to filing suit. FIC, on the other hand, argues that MMC's knowledge of Lessing's acts constitutes "discovery of such loss" under Paragraph 22 and that knowledge of the <u>extent</u> of the loss is irrelevant for determination of the discovery date.

As a matter of law, FIC is correct. It is the discovery of the facts giving rise to a potential claim—not the discovery of the extent of loss—which triggers the date of "discovery of such loss" under the policy. In <u>Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc.</u>, 691 So. 2d 208 (La. App. 1 Cir. 1997), the Louisiana First Circuit Court of Appeal had before it a provision in a "claims made" comprehensive blanket crime policy which required the insured to give the insurer notice "[u]pon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss." <u>Id</u>. at 212. The court stated:

> Appellants argue that a discovered loss means more than an occurrence which may give rise to a claim for loss. Newpark Resources avers that it did not truly discover its loss until the trial court rendered a final judgment; it was at that time it sustained a loss, and only then was the notice requirement effective. . . . We disagree.
>
> * * *
>
> Appellants cite <u>FDIC v. Fidelity & Deposit Co. of Maryland</u>, 45 F.3d 969, 974 (5 Cir.1995) for the proposition that discovery of a loss, for purposes of coverage under a blanket bond, requires that the insured have more than mere suspicion of loss. We agree, but do not find their reliance on that case helpful to their cause. We find that the filing of a petition by Tubular went beyond "mere suspicion."
>
> * * *
>
> We . . . find that the wording of the original petition filed by Tubular was

10

> sufficient to put Aztec and its holding company, Newpark Resources, on notice of a claim. The petition named Ken Chalaire [the employee wrongdoer] by name and identified the actions taken by him in the matter at issue.

Newpark Resources, 691 So. 2d at 212-213. Although Newpark Resources involved a notice provision in a "claims made" policy rather than a limitation of suit provision, the analysis of what constitutes discovery of loss is equally applicable to the instant case.

Interpreting a similar limitation of suit provision in a fidelity bond, the United States Fifth Circuit reasoned:

> Citing no authority, the Company argues that the Bank did not discover any loss within the Bond Period because it did not discover any actual dishonesty on the part of Coffield. This argument is frivolous. It is true that, according to the Bank's own admissions, it discovered no dishonesty and lost no lawsuit arising out of the alleged forgery and check kiting scheme. The Bank discovered only that a claim against it was being made on the basis of certain purported actions of its President; as the Bank repeatedly states throughout its argument, it discovered no dishonesty because none in fact existed and suffered no monetary loss because it lost none of the seven lawsuits. Whether the Bank actually discovers dishonesty or actually incurs a loss is, however, completely irrelevant. A loss is "discovered" within the meaning of the loss provisions of the Bond when the insured party discovers facts sufficient to create a condition in which the insured might be subjected to a claim against which it is indemnified by the Bond. See Fidelity Savings & Loan Association v. Republic Insurance Co., 513 F.2d 954 (9th Cir. 1975); Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co., 426 F.2d 729 (5th Cir. 1970); Mount Vernon Bank & Trust Co. v. Aetna Casualty & Surety Co., 224 F. Supp. 666 (E.D.Va.1963); National Surety Corp. v. First National Bank of Midland, 431 S.W.2d 353 (Tex.1968).

First Nat'l Bank v. Fidelity & Casualty Co., 634 F.2d 1000, 1004-1005 (5th Cir. 1981).

We believe that these cases are apposite. In Newpark Resources, the insured's argument "that it did not truly discover its loss until the trial court rendered a final judgment," Newpark Resources, 691 So. 2d at 212, is analogous to MMC's argument here that "discovery of such loss" did not occur until it discovered the extent of loss. This is

11

not the proper focus, however. The proper focus should be the first point at which the insured knows the identity of a wrongdoer and the actions which may subject the insured to loss or liability. In Newpark Resources, that point was the filing of suit. In this case, that point was reached with Jo Lessing's signed confession on January 26, 2004—or, at the latest, on February 2 or 3, 2004, when MMC's insurance representative learned of the confession.

Although MMC did not know whether or to what extent it might have suffered loss or liability at Jo Lessing's hand, it had certainly discovered "facts sufficient to create a condition in which the insured might be subjected to a claim against which it is indemnified." First Nat'l Bank v. Fidelity & Casualty Co., 634 F.2d at 1004. Indeed, Ms. Dekeyzer, the plaintiff's Insurance Administrator, contacted MMC's insurance agent regarding "a possible claim for theft of monies by an employee" the day after she received knowledge of the confession. (Doc. # 43-2, Exh. A to plaintiff's memo in opposition to Doc. # 28). The May 12, 2004 letter from Gary Henry of the Chubb Group of Insurance Companies to Ms. Dekeyzer identifies the date of loss as January 26, 2004. (Doc. # 43-2, Exh. A-3). The proof of loss filed by Ms. Dekeyzer on November 22, 2004 identifies the date of loss as January 26, 2004, as does the sworn statement and proof of loss signed by Gary Grand, Administrator of Lexington House; indeed, the latter document's typed response in the "Date of Loss" field is "Discovered 01/26/04." (Doc. # 28-5, Exh. C, pp. 1, 10).

MMC argues that it was possible for MMC to escape liability altogether under "the pertinent laws pertaining to banking and commercial paper." (Doc. # 43-1, p. 8).

12

MMC further argues that because Jo Lessing had promised to pay back the stolen funds, it was not clear that MMC would even face loss for Ms. Lessing's actions and liability to patients whose accounts were affected by her defalcation. (Doc. # 43-1, p. 9). At the same time, however, MMC hypothesizes that it might be liable under <u>respondeat superior</u> in tort, that it still might be subject to liability under the law pertaining to negotiable instruments, and that it could remain liable if she failed to repay. (Doc. # 43-1, pp. 8-9).

Thus, even while arguing that MMC did not <u>necessarily</u> face liability, MMC holds out the possibility that MMC may have suffered loss after all. This is exactly the type of situation "when the insured party discovers facts sufficient to create a condition in which the insured might be subjected to a claim against which it is indemnified," <u>First Nat'l Bank v. Fidelity & Casualty Co.</u>, 634 F.2d at 1004-1005. Consequently, MMC's knowledge of Jo Lessing's actions, without more, constitutes "discovery of such loss" under the FIC policy as a matter of law.

The loss actually was discovered when Jo Lessing signed her confession on January 26, 2004. Even under a technical reading of the policy that allows discovery only by, <u>e.g.</u>, an "Insurance Representative," Ms. Dekeyzer's discovery on either February 2 or 3, 2004 satisfies that requirement. In Gary Henry's May 12, 2004 letter from the Chubb Group of Insurance Companies, agent for FIC, to Ms. Dekeyzer, Mr. Henry detailed that in granting the extension of time to file the proof of loss, the insurer waived none of the "bond's" other terms and conditions and expressly reserved all other rights. FIC did not waive the two-year limitation period for filing suit. Because MMC's suit was filed on

February 15, 2006, it was not timely filed under Paragraph 22 of Policy # 81814819. Thus, defendant FIC's Motion for Summary Judgment for Plaintiff's Failure to Timely File Action Pursuant to Terms of Insurance Policy (Doc. # 28) must be GRANTED, and the plaintiffs' claims will be DISMISSED with prejudice.

### THE SECOND MOTION (DOC. # 29): OTHER ISSUES

Because we will grant the first motion and dismiss all of the plaintiffs' claims, the second motion (Doc. # 29) will be DENIED AS MOOT.

### CONCLUSION

For the foregoing reasons, defendant Federal Insurance Company's Motion for Summary Judgment for Plaintiff's Failure to Timely File Action Pursuant to Terms of Insurance Policy (Doc. # 28) will be GRANTED, and plaintiffs' claims will be DISMISSED with prejudice. The Motion for Summary Judgment by Federal Insurance Company (Doc. # 29) will be DENIED AS MOOT.

SIGNED on this 19 day of November, 2007, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE